KILGOUR v. SCOTT et al.

(Circuit Court, S. D. New York. April 9, 1900.)

1. MORTGAGES—ABSOLUTE CONVEYANCE AS SECURITY—RIGHTS OF PARTIES.
   A creditor holding the title to real estate, subject to a mortgage, as security, who buys the property when sold under the mortgage, holds the title acquired subject to the original trust, and, in case he sells the property, is accountable to the debtor for the proceeds, less the amount expended in redeeming from the mortgage.

2. SAME—CONSTRUCTION OF CONTRACT.
   Where an instrument of defeasance executed by a creditor, to whom the debtor had conveyed property as general security for his indebtedness, provided that, as security for a specified amount of such indebtedness, the creditor should accept a mortgage upon other property, which was given, and subsequently foreclosed by the creditor, the effect of such agreement was to take the amount specified from the general indebtedness secured by the property conveyed, which, on an accounting, could not be charged with any deficiency remaining due on the mortgage debt after foreclosure.

3. SAME—UNAUTHORIZED SALE BY GRANTEE.
   A creditor, to whom property is conveyed as security under an agreement authorizing its sale only at a price to be agreed upon between the parties or fixed by an umpire, who sells the property without observing such agreement, is accountable to the debtor for the actual value of the property at the time of settlement, if greater than the price received.

In Equity. Suit for an accounting and redemption under a conveyance of property as security. On exceptions to report of master.

William S. Bennett, for plaintiff.
Lewis E. Carr, for defendants.

WHEELER, District Judge. The defendant Scott, cashier of the defendant bank, held the legal title to several parcels of real estate, to secure it for dues from the plaintiff, under an agreement for conveyance, with a statement of the debts, dated December 14, 1894, and an accounting has been had of the sums due in equity. Some exceptions have before been disposed of. Others have not been heard. The defendant's exceptions that have come here to be heard relate to the gains on sales of the Shohola Glen property before this agreement. St. John, president of the bank, held the title as security for what the plaintiff owed the bank; that title was conveyed to defendant Scott, cashier of the bank, without other consideration, to be held for the same purpose. Without foreclosure, he sold the property. Afterwards a part of it was sold on foreclosure of a prior mortgage, and bid in by him, and he acquired the rest. Then he made $1,000 on an attempted sale, and $12,000 more than was credited or disclosed to the plaintiff on a completed sale. The master has allowed these gains to the plaintiff. The defendant insists that after Scott got the property back he held it as a stranger, and could dispose of it without accountability; but it was all the while subject to the plaintiff's right to redeem, which he had no right to sell, and could not cut off by any form of sale and repurchase, or other circuity of transfer short of a foreclosure. However it might have been as to other purchasers without notice, he always had notice, and the title came back to him subject to the right of the plaintiff to redeem it from the bank, for whom Scott held it, on proper account of what was paid to redeem it from the outside mortgage, as an expense, and of what was realized from it as a profit. The master appears to have treated the transaction according to this view, agreeably to the decree. This amount should have been applied in reduction of the statement of indebtedness attached to the agreement of defeasance of December 14, 1894, when it was made, and would have brought the amount down to $48,936.

One of the plaintiff's exceptions now here considered relates to the Parker's Glen property, of Pennsylvania. That agreement for conveyance provided that:

"The said William E. Scott and the said bank agree to accept as security for the payment of twenty thousand dollars of said indebtedness a mortgage executed under the hand and seal of the said John F. Kilgour, or under the hand and seal of such trustees as he may elect to hold said title for him, covering all the property aforesaid in the state of Pennsylvania, conditioned for the payment of said sum in five years from its date, and bearing interest at the rate of six per cent. per annum, payable semiannually, and containing a clause setting forth that the whole of said principal sum shall be due if default be made in the payment of any installment of said principal sum or interest thereon when they shall respectively become due, and shall remain due and unpaid for three months thereafter, and containing a further clause that the necessary costs required to foreclose the said mortgage shall, upon foreclosure, be added to the principal sum, and collected therewith, as a part of said indebtedness."

The mortgage was given, and on default the property was sold on foreclosure to Scott in December, 1896, for $9,005, and was resold by him February 15, 1898, for $17,500. The master has, with the consent of the defendants, credited the plaintiff with $16,222.68,

the net proceeds of this transaction, with some observations indicating that, while the property may have been worth much more, lack of due diligence, which would include good faith, had not been shown. But that part of the agreement of defeasance quoted took that $20,000 out of the general indebtedness, and the mortgaged property out of the general property, upon the making of the mortgage, leaving the general indebtedness $20,000 less, or $28,936, secured by the general property, other than that covered by the mortgage. As the mortgage was to be accepted as the security for this. $20,000, by its acceptance the other property was relieved to that extent, and would not be holden for any deficiency in this mortgage security; otherwise, the making of the mortgage would be nugatory. And this mortgage to the bank itself, provided for in the agreement, was different from what a mortgage to an outsider would have been, and was not a mere charge upon the property, to be paid off as an expense, but stood, by the terms of the agreement, as a separate thing, to follow its own exigencies, without affecting the rest, whatever its outcome should be. This is not a bill to redeem that mortgage as such, and the foreclosure would apparently be a bar to it, or to that part of it, if it was. In this view, the other exception relating to Parker's Glen becomes immaterial.

Another of the plaintiff's exceptions that has come here relates to the Passaic property. It was covered by outside mortgages,—one parcel to one Archer; others to one Gaston or the Mutual Life Insurance Company, or both. The agreement for conveyance contained this clause:

"It is agreed by and among the said parties that the title to the property lying and being in the city of Passaic, county and state aforesaid, shall be and remain until said indebtedness is wholly discharged, as at present, in the name of William E. Scott, who shall, except as to that part hereinafter described, convey the same from time to time, in whole or in part, to such purchaser or purchasers as shall be obtained, at a price to be alike satisfactory to the said John F. Kilgour and the said William E. Scott. If the price named shall not be alike 'satisfactory to the said parties, then they shall select an umpire, whose decision upon the question of value shall be binding and conclusive upon said parties."

The property excepted is not now in question, and there was no provision for taking up the outstanding mortgages. The property covered by the Archer mortgage went to outsiders upon foreclosure, —fairly, so far as appears,—and nothing seems to be left for consideration about that. The bank bid in the other parcels in question at foreclosure sales, and sold them, without following the agreement in respect to the sale, to which the bank was a party as well as Scott, in so far as has been found and reported, and as is, left to be implied. These purchases and payments were mere extinguishments of charges upon the property, which would be held afterwards, as before, subject to the agreement of defeasance, and to liability for these payments as expenses. The master has reported that "there is no satisfactory evidence to show that any larger sum could have been realized by the bank with reasonable diligence." But this does not seem to be the true measure of the liability. They were not to be sold at all, but upon the plaintiff's and Scott's agree-

ment, or the decision of an umpire, as to price. Having so, by breach of trust, parted with the title contrary to the plaintiff's rights, the bank and Scott, who stand together, have incurred a liability which can justly be no less than the full value of the property to the plaintiff. For want of a finding as to this, the case must, as now viewed, go back to the master, that this value may be supplied.

The other material exceptions relate to the personal property covered by the plaintiff's bill of sale to Wands, which afterwards came from Wands to the defendant. The plaintiff's claim as to this rests upon a transaction between him and Wands, who would be primarily liable, if any one, and is not a party here. The ruling of the master that nothing comes from it for consideration here seems to be correct.

Defendants' exceptions are overruled. The plaintiff's first and fourth exceptions are sustained, and $20,000 is to be credited to the plaintiff on account of Parker's Glen, as of December 14, 1894, in lieu of the allowances made by the master. The third of the plaintiff's exceptions is sustained, and the report is recommitted for a finding as to the just value of the Passaic property covered by the Gaston and Mutual Life mortgages. The other exceptions are overruled, without prejudice to the decision upon those sustained.